UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

PEDRO PAGAN,

                    Petitioner,
                                            12 Civ. 0732
    - against -                              OPINION

THE PEOPLE OF THE STATE OF NEW YORK,

                    Respondent.

------------------------------------X

A P P E A R A N C E S:



        PEDRO PAGAN
        Pro se

        Attorneys for Respondent

        ROBERT T. JOHNSON
        Bronx County District Attorney
        198 East 161st Street
        Bronx, NY 10451
        By:  Allen H. Saperstein, Esq.
             Robert R. Sandusky, III, Esq.

**Sweet, D.J.**

Pedro Pagan ("Pagan" or the "Petitioner") filed a petition seeking habeas corpus relief pursuant to 28 U.S.C. § 2254 to vacate his conviction entered on May 22, 2009, in New York State Supreme Court, Bronx County, convicting him, after a jury trial, of second-degree robbery (N.Y. Penal Law § 160.10(2)(a)) and sentencing him, as a second-felony offender, to a determinate term of imprisonment of ten years followed by five years of post-release supervision.

Based upon the conclusions set forth below, the petition is denied.

## I. The Facts

On February 22, 2008, at about 7:30 P.M., Hope McLeish ("McLeish") was robbed at knife-point as she was walking home from the Bronx Botanical Garden Metro North station.  According to McLeish, she had several unobstructed views of the perpetrator's face during the robbery.  She also sustained injuries to her hand and fingers, and experienced pain and bruises on her back and knees.

1

After the robbery was over, McLeish flagged down a
passing motorist and used his cellular phone to call 911.
Sergeant Kevin Maloney ("Maloney") proceeded to the scene of the
robbery, where he interviewed McLeish and broadcast additional
information to the officers canvassing the area.  McLeish
described the perpetrator as a 25 to 30 year-old Hispanic male,
five feet, seven inches tall, wearing a black jacket, a red
hooded sweatshirt and a black skull cap.

Responding to the transmission, police officers Juan
Terrero ("Terrero") and Leonardo Rojas ("Rojas") saw the
Petitioner a short distance from the robbery location, wearing a
black jacket, red hooded sweatshirt, and a red and black
baseball cap.  Officers Terrero and Rojas detained the
Petitioner and called Maloney to bring McLeish around to see if
she could identify the Petitioner as the man who robbed her.
Another suspect was stopped by a different police unit but that
man was not shown to McLeish and he was released.  No paperwork
was prepared with respect to the second stop but at least one
officer of the second unit remembered stopping a man in response
to the description on the radio transmission.

As soon as Maloney and McLeish reached the Petitioner,
McLeish identified him, stating that she was "one hundred and

2

ten percent" certain that the Petitioner was the man who had just robbed her. Once the Petitioner was in custody, the officers recovered three one-dollar bills from his pants pocket, a black knit cap from his jacket pocket, and the black jacket, red hooded sweatshirt, and the red and black baseball cap that he was wearing. Neither a knife nor McLeish's purse was recovered.

The Petitioner maintained that he never robbed McLeish and that the first time he saw her was at trial.

## II.  **Prior Proceedings**

On March 14, 2008, by Indictment Number 1076/08, a Bronx County grand jury charged the Petitioner with the crimes of Robbery in the First Degree, Robbery in the Second Degree, Robbery in the Third Degree, Assault in the Second Degree, Assault in the Third Degree, Grand Larceny in the Fourth Degree and Petit Larceny.

Before and during the trial, the exclusion of evidence pertaining to the simultaneous stop of the second man was the subject of lengthy arguments. On December 18, 2008, the Bronx Supreme Court (the "Hearing Court") conducted a hearing pursuant

to United States v. Wade, 388 U.S. 218, 87 S. Ct. 1926, 18 L.
Ed. 2d 1149 (1967), in order to determine the admissibility of
testimony relating to the out-of-court identification of the
Petitioner immediately preceding his arrest.  At the hearing, it
was established that Maloney had radio transmitted the
description given to him by McLeish so that other officers in
the area could look for potential suspects.  Within minutes of
hearing the radio transmission, the Petitioner and another man,
were detained by different police officers.  Because Officer
Rojas' location was easier to get to, Maloney drove McLeish to
the Petitioner first.  Once they arrived, McLeish immediately
identified the Petitioner and no further identification
procedures were conducted.


        At the conclusion of the hearing, the Petitioner's
attorney advanced the argument that "to ensure greater accuracy,
the appropriate thing for the police to have done would have
been to bring the two people whom they did apprehend together
for the complaining witness to look at."  (H.T. at 84).  Thus,
the Petitioner contended that testimony concerning his
identification by McLeish should have been suppressed because
the procedure that yielded the positive identification was
unduly suggestive and tainted by improper police conduct.  (Id.
at 84-86).  The prosecution argued that the Petitioner had

failed to meet his burden of establishing impropriety or undue
suggestion by a preponderance of the evidence, and that "[t]he
fact that two people were stopped in this case . . . has no
bearing on the suggestivity of this particular show up
identification."  (Id. at 86-89).

        The People also made a motion in limine to preclude
the Petitioner from "playing any radio transmission . . . which
could pertain to another individual being stopped," contending
that the only reason for doing so would be "to attribute
culpability to that third part."  The trial court intimated that
the Petitioner might also use the recording to attempt to
establish "that the police investigation was incomplete and
[that the police] jumped to a conclusion."  The Petitioner
indicated that the basis for his request "lies somewhere between
the two." (T. at 464-469, 473-475, 500-501, 508-509).

        The Petitioner also interviewed one of the officers
who had detained the other man, who indicated that, although he
had absolutely no recollection of the events nor of the person
he detained, he would be willing to testify that it was his
voice among those recorded on the police communications
indicating that another man had been detained.  (Id. at 541-
549).  The court ultimately ruled that the Petitioner failed to

5

meet his obligation "to make an application to the court to indicate what the evidence [of third-party] culpability would be" and precluded the Petitioner from introducing the recorded transmissions and the officer's testimony concerning the stop of the other person.  (Id.).

On January 6, 2009, the Hearing Court denied suppression by noting that, although the police never conducted an identification procedure comparing both detainees, the testimony relating to McLeish's identification of the Petitioner would nevertheless be admissible at trial.  The court found that "the identification of [the Petitioner] was essentially spontaneous and occurred in close spatial and temporal proximity of the offense . . . [that there was] no proof of any unduly suggestive police conduct . . . [and that] none of the arguments forwarded by [the Petitioner led the court] to conclude that the showup procedure here in issue was unduly suggestive or resulted, in any respect, in an unreliable identification." (People's Ex. 2, Bronx Supreme Court decision and order, dated January 6, 2009).

On April 24, 2009, the Petitioner was found guilty, after a jury trial, of Robbery in the Second Degree, (N.Y. Penal Law § 160.10(2)(a)).  On May 14, 2009, the Petitioner, through

6

his then-attorney Lois White of the Legal Aid Society, moved to

vacate his conviction prior to sentence pursuant to N.Y.C.P.L.

§  330.30(1) contending that the trial court had "unfairly

precluded [him] from presenting evidence of third party guilt."

(People's Ex. 3, Petitioner's N.Y.C.P.L § 330.30[1] motion,

dated May 14, 2009).  The motion was denied on May 22, 2009 by

the Bronx Supreme Court.  The Petitioner was sentenced as a

second felony offender, to a determinate sentence of ten year

incarceration, followed by five years of post-release

supervision, with an eighteen-year order of protection issued in

favor of the victim.


        On direct appeal to the New York State Supreme Court,

Appellate Division, First Department (the "Appellate Division"),

the Petitioner raised five claims:

    Point I – Since two separate police units, responding
    separately to the same radio-description of the
    suspect, simultaneously but separately apprehended two
    Hispanic men, the single show-up identification of the
    [the Petitioner] was unnecessarily suggestive,
    mandating suppression.  U.S. Const. Amends. VI, XIV;
    N.Y. Const. Art I § 6.

    Point II – The court deprived [the Petitioner] of his
    right to confrontation and to present a defense when
    it precluded (1) the tape-recorded radio transmission
    of the stop of a second man, and (2) the testimony of
    the officer who stopped the second man, where the
    evidence was admissible under Kyles v. Whitley, 514
    U.S. 419 (1995), to challenge the thoroughness of the

                                7

police investigation.  U.S. Const. Amends. VI, XIV;
N.Y. Const. Art I § 6.

Point III – The testimony of the office who stopped
the second man was also admissible under People v.
Primo, 96 N.Y.2d 351 (2001), as evidence of possible
third-party culpability, and to undermine the
identification evidence[;] as a result, its preclusion
deprived [petitioner] of his rights to confrontation,
to present a defense, and [to] a fair trial.  U.S.
Const. Amends. VI, XIV; N.Y. Const. Art I § 6.

Point IV – Evidence of "a little pain" in the back of
the neck, no medical treatment, and the taking of a
few over-the-counter Tylenol pills was legally
insufficient to establish the "substantial pain"
requirement to support a conviction of [Robbery in the
Second Degree], mandating that the judgment be reduced
to [Robbery in the Third Degree].  U.S. Const. Amends.
VI, XIV; N.Y. Const. Art I § 6.

Point V – In light of the minor injuries to the
complainant and [the Petitioner's] difficult past and
[severe] learning difficulties, a sentence of ten
years was unduly harsh.  U.S. Const. Amends. VI, XIV;
N.Y. Const. Art I § 6.

(See People's Exs. 5-7).


On May 19, 2011, the Appellate Division affirmed the

judgment of conviction.  See People v. Pagan, 84 A.D.3d 605 (1st

Dept. 2011).  In rejecting the Petitioner's argument, the

Appellate Division found that the hearing court properly denied

the Petitioner's suppression motion, stating that:


[Petitioner's] sole challenge to the prompt showup
identification is his claim that the police should
have also shown the victim a second possible suspect.
Police radio communications indicated that at the time

8

the police stopped defendant, who met a detailed
description of the alleged robber, another team of
officers stopped a second man several blocks away,
allegedly in response to the same radioed description.
This man was apparently not detained for any
significant period, and no stop-and-frisk report or
other record was made of the stop.  The hearing
evidence did not establish whether, or to what extent,
the second man, may have met the description.  In any
event, regardless of whether the second man met the
description, [the Petitioner] has not provided any
authority for the proposition that the police are
constitutionally required to include alternative
suspects in a showup.  Moreover, [the Petitioner] has
not advanced any lawful basis for the police to detain
and transport a person for investigatory purposes
after they no longer consider the person a suspect.

Pagan, 84 A.D.3d at 606.


       In addition, the Appellate Division rejected the

Petitioner's claims as to the tape recording and officer's

testimony, stating that:


       The police stop of a second man around the time of
       [the Petitioner's] arrest was also the subject of
       issues raised at trial.  The trial court properly
       exercised its discretion when it precluded [the
       Petitioner] from introducing a tape recording of the
       police broadcast of the stop of the second man, or the
       testimony of the officers who made the stop.  Given
       the very limited information about the stop, the
       proffered evidence lacked any probative value either
       to challenge the reliability of the police
       investigation or to suggest third-party culpability.

       The tape only established the fact that a second man
       was stopped at a particular place, but nothing about
       the second man's appearance.  The officers could not
       recall the stop even after defense counsel played the

tape for them.   [Petitioner] relies on the inference
that if the police stopped the second man after
hearing a description on the radio, he must have met
the description.   However, the record is consistent
with various scenarios.   Among other things, the
police may have momentarily stopped the man and
released him upon a realization that he did not meet
the description, or the man may have attracted police
attention for some kind of suspicious behavior
unrelated to the description.   Accordingly, the court
properly concluded that the proffered evidence was too
speculative to have any probative value, and that any
reference to the second man was likely to confuse or
mislead the jury,

[Petitioner] did not assert, except by way of untimely
postverdict motion, any constitutional right to
introduce the proffered evidence.   Accordingly, he did
not preserve his constitutional claims, and we declide
to review them in the interest of justice.   As an
alternative holding, we find no violation of [the
petitioner's] right to confront witnesses and present
a defense.

Id. at 606-07 (citations omitted).


        On November 18, 2011, the New York Court of Appeals

denied the Petitioner's application for leave to appeal to that

court.   See People v. Pagan, 17 N.Y.3d 954 (2011).


        On April 12, 2012, the Petitioner filed a pro se

petition for a writ of habeas corpus and it was marked fully

submitted on August 27, 2012.


## III. Discussion

10

**A) Standard of Review for Habeas Corpus Petitions Brought
Pursuant to 28 U.S.C. § 2254**

Section 2254 of the 1996 Antiterrorism and Effective
Death Penalty Act ("AEDPA") provides a federal remedy for state
prisoners if their continued custody is in violation of federal
law.  Pub. L. No. 104-132, 100 Stat. 1214, codified at 28 U.S.C.
§ 2254(a); see Chandler v. Florida, 449 U.S. 560, 571, 101 S.
Ct. 802, 66 L. Ed. 2d 740 (1981).  ("This Court has no
supervisory authority over state courts, and, in reviewing a
state court judgment, we are confined to evaluating it in
relation to the Federal Constitution.").  Errors of state law
are not cognizable on federal habeas review.  Estelle v.
McGuire, 502 U.S. 62, 71-72, 112 S. Ct. 475, 116 L. Ed. 2d 385
(1991). Petitioners bear the burden of proving violations of
federal law by a preponderance of the evidence.  See Jones v.
Vacco, 126 F.3d 408, 415 (2d Cir. 1997).

Thus, under the AEDPA, federal habeas courts must
presume the state court's factual findings are correct and may
overturn those findings only if the Petitioner offers evidence
of their incorrectness.  28 U.S.C. § 2254(e).  A state court's
adjudication may be overturned only if it either:

11

(1) resulted in a decision that was contrary to, or
involved an unreasonable application of, clearly
established Federal law, as determined by the Supreme
Court of the United States; or

(2) resulted in a decision that was based on an
unreasonable determination of the facts in light of
the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); see Williams v. Taylor, 529 U.S.

362, 375-76, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).


With respect to the "contrary to" clause, the writ may

issue in two circumstances:  first, if the state court decision

"applies a rule that contradicts the governing [Supreme Court]

law"; and second, if the state court decision addresses a set of

facts "materially indistinguishable" from a relevant Supreme

Court case and arrives at a result different to that reached by

the Court.  Lockyer v. Andrade, 538 U.S. 63, 73, 123 S. Ct.

1166, 155 L. Ed. 2d 144 (2003), (quoting Williams, 529 U.S. at

405-06).  The "clearly established Federal law" refers to

Supreme Court holdings, as opposed to the dicta, as of the time

of the relevant state court decision.  See Williams, 529 U.S. at

412.


A state court decision involves an "unreasonable

application" of Supreme Court precedent when the state court

either "identifies the correct governing legal rule" from the

12

Supreme Court's cases but "unreasonably applies it to the facts"
of the case, or "unreasonably extends a legal principle from
[the Court's] precedent to a new context where it should not
apply or unreasonably refuses to extend that principle to a new
context where it should apply."  Id. at 407.

Under the "unreasonable application" clause, "a
federal habeas court may not issue the writ simply because that
court concludes in its independent judgment that the state-court
decision applied clearly established federal law erroneously or
incorrectly."  Id. at 411.  "Rather, it is the habeas
applicant's burden to show that the state court applied [Supreme
Court precedent] to the facts of his case in an objectively
unreasonable manner."  Woodford v. Visciotti, 537 U.S. 19, 25,
123 S. Ct. 357, 154 L. Ed. 2d 279 (2002).  Any determination of
a factual issue made by a state court must be presumed correct
unless the petitioner can show by clear and convincing evidence
that such presumption should not apply.  See 28 U.S.C. §
2254(e)(1).

In addition, the Supreme Court's jurisprudence on the
"unreasonable application" clause of § 2254(d)(1) makes "clear
that whether a state court's decision was unreasonable must be
assessed in light of the record the court had before it."

Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004).  In Cullen v. Pinholster, the Court recently emphasized that, "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas Petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court."  --- U.S. ----, 131 S. Ct. 1388, 1400, 179 L. Ed. 2d (2011).

## B) The State Court's Adjudication Was Not Contrary to Clearly Established Federal Law or Unreasonable

Petitioner contends that he is entitled to habeas relief because:

> [T]he defense argued that the show up identification should be suppressed because it was unnecessarily suggestive.  The decision – the court denied the motion (Boyle. J.).  Decision, filed January 3, 2009.  Evidence of the Stop of the Second Man.  Preclusion of the Tape Recording.  Preclusion of the officers' testimony.

(Petition at ¶ 13).

As the Petitioner is pro se, his submissions will therefore be liberally construed and read to raise the strongest argument they suggest.  See e.g., Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996); U.S. v. Ramirez, No. 98 Cr. 927(RWS), 2012 WL 11280, at *1 (S.D.N.Y. Jan. 3, 2012).  Thus, liberally

14

construing the petition, it appears that the Petitioner is raising the several claims that he advanced on direct appeal to the Appellate Division.  The first claim that the Petitioner raised on direct appeal was that, "[s]ince two separate police units, responding separately to the same radio-description of the suspect simultaneously but separately apprehended two Hispanic men, the single show-up identification of [the Petitioner] was unnecessarily suggestive, mandating suppression."  (Ex. 5, pp. 2, 27-29).  Thus, he contends that the show up identification was unduly suggestive because McLeish should have been allowed to view the second, unknown person who had been detained.  Next, he argues that the jury should have heard evidence concerning the detention of the alternative perpetrator suspect.  The Petitioner advances that the tape recording and the officers' testimony regarding the second person detained unfairly precluded him from presenting evidence of third-party guilt.


The Petitioner's Show Up Identification Claims


        Clearly established federal law requires a two-part inquiry to determine the admissibility of identification evidence.  As the Second Circuit noted, "[r]eliability is the touchstone for the admission of eyewitness identification

testimony pursuant to the Due Process Clause of the Fourteenth Amendment . . . [and] our inquiry into the reliability of eyewitness identifications proceeds in two stages." Brisco v. Ercole, 565 F.3d 80, 88 (2d Cir. 2009). First, the court must determine whether the identification procedure used was unduly or unnecessarily suggestive, if it is based on police procedures that create "a very substantial likelihood of irreparable misidentification. Perry v. New Hampshire, --- U.S. ---, 132 S. Ct. 716, 718, 181 L. Ed. 2d 694 (2012) (quoting Simmons v. United States, 390 U.S. 377, 384, 88 S. Ct. 967, 19 L. Ed. 2d 1247 (1968)). As the Supreme Court noted, show up identification procedures have been "widely condemned" because they are inherently suggestive. See Stoval v. Denno, 388 U.S. 293, 302, 87 S. Ct. 1967, 18 L. Ed. 2d 119 (1967), overruled on other grounds by Griffith v. Kentucky, 479 U.S. 314, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987). However, a show up identification only violates the due process clause where it is "unnecessarily suggestive." Brisco, 565 F.3d at 88.

If the court finds that "impermissibly suggestive procedures are not employed, independent reliability is not a constitutionally required condition of admissibility, and the reliability of the identification is simply a question for the jury." United States v. Wong, 40 F.3d 1347, 1359 (2d Cir. 1994)

16

(internal citation omitted).  However, if the identification
procedure was unnecessarily or unduly suggestive, the court must
reach the second step of the analysis and "weigh the corrupting
effect of the suggestiveness against other factors indicating
that the identification may be independently reliable."  Raheem
v. Kelly, 257 F.3d 122 (2d Cir. 2001); Manson v. Branthwaite,
423 U.S. 98, 114, 97 S. Ct. 2243, 52 L. Ed. 2d 140 (1977)
(stating that even a suggestive procedure "does not in itself
intrude upon a constitutionally protected interest" if it did
not contribute significantly to the identification of the
defendant.).

        Whether or not the identification was independently
reliable turns on the factors set forth by the Supreme Court in
Neil v. Biggers, 409 U.S. 188, 199-200, 93 S. Ct. 375, 34 L. Ed.
2d 401 (1972).  These factors, which are viewed under the
totality of the circumstances, include "the opportunity of the
witness to view the criminal at the time of the crime, the
witness' degree of attention, the accuracy of the witness' prior
description of the criminal, the level of certainty demonstrated
by the witness at the confrontation, and the length of time
between the crime and the confrontation."  Id.

        In the instant case, the Hearing Court determined that

17

the challenged show up procedure was not unnecessarily
suggestive.  The court noted that the show up was "the
culmination of an unbroken chain of exigent events" such that
the "identification of defendant was essentially spontaneous and
occurred in close spatial and temporal proximity to the
offense." (People's Ex. 2 at 6, 7-8).  In addition, upon review
of the record and an examination of the conduct of the police,
the court found no impropriety or undue suggestion attendant to
the identification procedure.  (Id.).  The Hearing Court thus
concluded that "the People indeed satisfied their initial burden
of establishing the reasonableness of the police conduct and the
lack of any undue suggestiveness in the pretrial identification
procedure." (Id. at 11).

Additionally, the Appellate Division upheld the
Hearing Court's decision, finding that the decision was neither
contrary to, nor an unreasonable application of, Supreme Court
precedent, and that it was not an unreasonable determination of
evidence adduced at the hearing.  The court stated that that the
Petitioner had failed to cite any case holding that "the police
are constitutionally required to include alternative suspects in
a show up." Pagan, 84 A.D.3d at 606.

The Petitioner, then and now, has failed to show that

18

the state court adjudication was contrary to clearly established federal law, that it involved an "unreasonable application" of clearly established federal law, or that it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  The presentation of a suspect, without alternates, for the purposes of an identification procedure does not offend clearly established Supreme Court precedent.  A review of the record also reveals no suggestion that the police employed an identification procedure that was impermissibly suggestive.

In addition, even assuming that the identification procedure was unnecessarily or unduly suggestive, when weighing the suggestiveness of the identification procedures against the reliability of the identification, the identification of the Petitioner was independently reliable and thus properly admitted.  The robbery took place within a short time frame of the identification and McLeish immediately and spontaneously identified the Petitioner as the man who had just robbed her. She also had several unobstructed views of the perpetrator's face and assured the police that she was "one hundred and ten percent sure" that they had apprehended the right man.  Thus, an examination of the Biggers factors reveals an independent basis for reliability in this case.

19

The Petitioner's Claims as to Proffered Evidence Concerning the
Alternative Perpetrator, Including the Preclusion of the Tape
Recording and Officer's Testimony

      Since the Petitioner did not raise his federal

constitutional claims in a timely fashion at trial, the

Appellate Division found that he had not preserved them for

appellate review under New York law.  New York procedural rules

require that questions of law raised on appeal must be preserved

by specific objection during trial.  N.Y.C.P.L. § 470.05(2)[1].

Because the Petitioner did not present his federal claims to the

trial court in compliance with state procedural rules, the

Appellate Division's refusal to adjudicate the claim as

unpreserved qualifies as an independent and adequate state

ground for denying federal review.  See Cone v. Bell, 556 U.S.

449, 465, 129 S. Ct. 1769, 173 L. Ed. 2d 701 (2009) (finding

that "consistent with the longstanding requirement that habeas

petitioners must exhaust available state remedies before seeking

---

[1] N.Y.C.R.L. § 470.05(2) provides: "For purposes of appeal, a question of law
with respect to a ruling or instruction of a criminal court during a trial or
proceeding is presented when a protest thereto was registered, by the party
claiming error, at the time of such ruling or instruction or at any
subsequent time when the court had an opportunity of effectively changing the
same.  Such protest need not be in the form of an "exception" but is
sufficient if the party made his position with respect to the ruling or
instruction known to the court, or if in response to a protest by a party,
the court expressly decided the question raised on appeal.  In addition, a
party who without success has either expressly or impliedly sought or
requested a particular ruling or instruction, is deemed to have thereby
protested the court's ultimate disposition of the matter or failure to rule
or instruct accordingly sufficiently to raise a question of law with respect
to such disposition or failure regardless of whether any actual protest
thereto was registered."

relief in federal court, we have held that when a petitioner
fails to raise his federal claims in compliance with relevant
state procedural rules, the state court's refusal to adjudicate
the claim ordinarily qualifies as an independent and adequate
state ground for denying federal review.") (internal citation
omitted).

Here, the Appellate Division's decision that the
Petitioner's constitutional claims were unpreserved was an
independent state procedural bar as it was based on well-
established New York rules and only those trial objections that
are both contemporaneous and specific are preserved for
appellate review. See N.Y.C.P.L. § 470.05(2); see also People
v. Stephens, 84 N.Y.2d 990, 992 (1994) (federal constitutional
arguments must be preserved by contemporaneous, specific
objections.).

During the course of the Petitioner's trial, his
attorney only argued that the evidence was admissible under
state law precedent.  The constitutional component of the claim
was not introduced until the Petitioner filed his N.Y.C.P.L. §
330.30(1) motion to set aside the verdict.  As such motions can
only set aside a verdict on grounds that would require reversal
as a matter of law if raised on appeal, and are not preserved

21

for appellate review.  See People v. Padro, 75 N.Y.2d 820, 821
(1990).

        The Second Circuit has "recognized the propriety of
such rules, noting that '[i]f a state appellate court refuses to
review the merits of a criminal defendant's claim of
constitutional error because of his failure to comply with . . .
a contemporaneous objection rule, a federal court generally may
not consider the merits of the constitutional claim on habeas
corpus review."  Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999)
(quoting Peterson v. Scully, 896 F.2d 661, 663 (2d Cir. 1990)).
In such cases, federal courts defer "to New York's consistent
application of its contemporaneous objection rules."  Id.  The
Appellate Division's holding here was the last reasoned opinion
on the Petitioner's federal constitutional claim, and provides
an independent and adequate state ground for its decision.
Pagan, 84 A.D.3d at 607; see Harris v. Reed, 489 U.S. 255, 109
S. Ct. 1038, 1044 n.10, 103 L. Ed. 2d 308 (1989) ("By its very
definition, the adequate and independent state ground doctrine
requires the federal court to honor a state holding that is a
sufficient basis for the state court's judgment, even when the
state court also relies on federal law.").  Accordingly, "absent
a showing of cause for the default and resulting prejudice,"
habeas review of the claims remains prohibited.  Velasquez v.

Leonardo, 898 F.2d 7, 9 (2d Cir. 1990).

To satisfy the cause standard, a petitioner must show that "'some objective factor external to the defense impeded counsel's efforts' to raise the claim in state court." McCleskey v. Zant, 499 U.S. 467, 493, 111 S. Ct. 1454, 1470, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). "[I]nterference by officials" is one such factor.  McCleskey, 499 U.S. at 494 (internal quotations omitted).

The Petitioner has not demonstrated cause for this failure to raise his constitutional claims until he filed his N.Y.C.P.L. § 330.30 motion, which was after the verdict was rendered and the jury was sent home.  As the Petitioner has failed to demonstrate cause for the default, there is no need to reach on the question of prejudice.  See Levine v. Comm'r of Correctional Srvs., 44 F.3d 121, 127 (2d Cir. 1995).

In addition, insofar as the recording and testimony about the second detained person were proffered as evidence to establish third-party culpability, the trial court's denial of that application was neither contrary to, nor an unreasonable application of federal law.  Since the Petitioner's proffered

23

evidence did not even establish the gender of the person stopped, much less that person's race, age, clothing or appearance, the trial court determined that the evidence was "of merely slight, remote or conjectural significance" and thus was insufficiently probative to outweigh [the] countervailing risks [including] undue prejudice to the opposing party, confusing the issues or misleading the jury." (T. at 19-20).

In any event, the Appellate Division held that the Hearing Court "properly concluded that the proffered evidence was too speculative to have any probative value, and that any reference to the second man was likely to confuse or mislead the jury." Pagan, 84 A.D.3d at 607. The Appellate Division stated that the Petitioner had not, "except by way of an untimely postverdict motion, any constitutional right to introduce the precluded evidence. Accordingly, he did not preserve his constitutional claims." Id. The court also found in the alternative, that there was "no violation of ["the Petitioner's] right to confront witnesses and present a defense." Pagan, 84 A.D.3d at 607. Accordingly, the state court's decision to preclude the proffered evidence was neither contrary to, nor an unreasonable application of, clearly established federal law.

**IV.  Conclusion**

24

For the foregoing reasons, the petition for a writ of habeas corpus is denied.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue.  28 U.S.C. § 2253; see also United States v. Perez, 129 F.3d 255 (2d Cir. 1997); Lozada v. United States, 107 F.3d 1011 (2d Cir. 1997).  Pursuant to 28 U.S.C. § 1915(a)(3), it is hereby certified that any appeal from this order would not be taken in good faith.  Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

It is so ordered.

New York, NY
November  8 , 2012

_____
ROBERT W. SWEET
U.S.D.J.

25